```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :   USDC SDNY
JOYCE MOBLEY,                                           :   DOCUMENT
                                                        :   ELECTRONICALLY FILED
                                                        :   DOC #: _____
                                        Plaintiff,      :   DATE FILED: April 6, 2018
                                                        :
                  v.                                    :   17 Civ. 9448 (KPF)
                                                        :
FIVE GEMS MANAGEMENT CORP.,                             :   OPINION AND ORDER
GRENVILLE OWNERS' CORP., and RON                        :
EDELSTEIN,                                              :
                                                        :
                                        Defendants.     :
                                                        :
------------------------------------------------------- X
```

KATHERINE POLK FAILLA, District Judge:

The parties to this action request that the Court approve a settlement agreement and dismiss this case, which Plaintiff Joyce Mobley brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 (the "FLSA"), and the New York Labor Law (the "NYLL"). Having reviewed the parties' submissions, the Court rejects the settlement agreement on the grounds that (i) the attorney's fees are excessive and (ii) the release of claims is impermissibly broad.

## BACKGROUND

On December 1, 2017, Plaintiff Joyce Mobley filed a complaint against Defendants Five Gems Management Corp. ("Five Gems"), Grenville Owners' Corp. (together with Five Gems, the "Corporate Defendants"), and Ron Edelstein. (Dkt. #1 ("Compl.")). Plaintiff was employed by the Corporate

Defendants in their property management business from sometime in 2010[1] until August 30, 2017. (*Id.* at ¶¶ 9, 15, 21). The Corporate Defendants paid her a gross salary of $8,667 per month, which payment was made by check at the beginning of each work month. (*Id.* at ¶¶ 17, 22). Plaintiff alleges that in April 2017, Defendant Edelstein gave her a check to cover her monthly salary, but that when she tried to deposit the check, the bank informed her that the payer's bank account had been closed. (*Id.* at ¶ 18). Plaintiff was therefore unable to deposit her April 2017 paycheck. (*Id.*). Plaintiff continued to work for Corporate Defendants until August 30, 2017. (*Id.* at ¶ 21). She alleges that Defendants failed to pay her for her last five months of work. (*Id.* at ¶ 20).[2] As a result, Plaintiff claims that she is due $43,335. (*Id.* at ¶ 23).

In the alternative, Plaintiff asserts that she is due minimum wage for each hour worked from April 1, 2017, through August 30, 2017. (Compl. ¶ 24). She alleges that she worked 864 hours during that time period, equivalent to $9,072 in hourly wages at the prevailing minimum wage. (*Id.* at ¶¶ 28-30). Plaintiff further alleges that, in violation of NYLL § 195, Defendants failed to provide her with any written notice regarding her regular rate of pay or the official name of her employer. (*Id.* at ¶ 31). Under NYLL § 198, she claims, she is "entitled to recover $50[ ] for each work day that the violations occurred

---

[1] Neither the Complaint nor the parties' submissions provide any greater precision as to when Plaintiff began to work at Five Gems.

[2] Defendants disagree. They claim that "Plaintiff was paid during certain times within this April thru August, 2017 period[.]" (Dkt. #21, at 2). However, Defendants do not specify when, how often, or in what amounts Plaintiff was paid, if at all, for her work from April 2017 through August 2017.

2

(capped at $5,000[ ]).") (*Id.* at ¶ 32). "Accordingly, because Plaintiff worked … for more than 100 days … , she is entitled to the statutory maximum of $5,000." (*Id.* (emphasis omitted)).

Plaintiff brought four causes of action against Defendants: (i) failure to pay earned wages, in violation of NYLL § 198; (ii) failure to pay minimum wage, in violation of 29 U.S.C. § 206; (iii) failure to pay minimum wage, in violation of NYLL § 652(1); and (iv) failure to give Plaintiff written notice regarding, *inter alia*, the regular rate of pay, overtime rate of pay, and official name of her employer, in violation of NYLL § 195. (Compl. ¶¶ 35-54). Plaintiff seeks damages for all lost wages and benefits, as well as attorney's fees, costs, and expenses incurred in prosecuting this action. (*Id.*).

An initial pretrial conference in this matter was scheduled for February 14, 2018. (Dkt. #5). On February 12, 2018, the parties requested that the Court adjourn the conference *sine die* because they "ha[d] reached a settlement in princip[le] … [and wished for] a reasonable period of time in order to execute a settlement agreement as well as file materials with the Court … pursuant to *Cheeks* v. *Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015)." (Dkt. #19). Later that day, the Court granted the parties' request. (Dkt. #20). It ordered the parties to file their *Cheeks* materials on or before March 16, 2018. (*Id.*).

As directed, on March 16, 2018, the parties submitted for the Court's approval a proposed settlement agreement under which Defendants would pay a total of $52,500, consisting of a $30,785.60 payment to Plaintiff and

$21,714.40 in attorney's fees, equivalent to 40 percent of the total settlement amount.[3] (*See* Dkt. #21). In exchange, Plaintiff would release:

> any and all claims ... against Defendants ... *including, without limitation*, the Wage and Hour Claims[;] all claims arising under the Fair Labor Standards Act ... , the New York Labor Law ... , the New York Wage Hour and Wage Payment Laws ... , and the New York Minimum Wage Act ... [;] all claims for breach of contract, compensation or remuneration of any kind[;] unpaid wages, unpaid overtime, unpaid prevailing wages and supplemental benefits, improper deductions, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, severance pay, bonuses, deferred compensation, [or] incentive plans[;] medical, dental, life or disability insurance coverage[;] or any other fringe benefit[.]

(Dkt. #21-1, at 3 (emphasis added)).

In support of the claim for $21,714.40 in attorney's fees, Plaintiff's counsel submitted a log detailing the time spent on this case and the hourly rate for the one attorney who billed in connection with this matter. (Dkt. #21-3). According to that log, the attorney worked for 28.321 hours and billed at an hourly rate of $450,[4] resulting in a total fee of $12,744.45.[5] (*Id.*). Plaintiff's counsel also submitted a report of expenses incurred in prosecuting this case. (*Id.*). Those expenses totaled $714.40, including (i) a $400 court

---

[3] According to the parties, the 40 percent contingency fee was "the rate agreed upon by Plaintiff and [Plaintiff's] counsel at the outset via a retainer agreement." (Dkt. #21, at 4).

[4] As discussed *infra*, the Court generally does not consider an hourly rate of $450 to be reasonable for someone with ten years' experience in wage and hour litigation, and it does not consider the rate to be reasonable here.

[5] The attorney's fees detailed in the settlement agreement are based not on counsel's billable hours, but instead on the 40 percent contingency fee that Plaintiff and Plaintiff's counsel agreed on at the outset of this litigation.

filing fee, (ii) $200 process server fees, (iii) $80 filing fees with the New York Secretary of State, and (iv) $34.40 postage and delivery fees. (*Id.*).

The proposed settlement agreement contains a confidentiality clause, according to which Plaintiff agrees not to disclose data or information that is proprietary to Defendants, not generally known to the public, and was unknown to Plaintiff before she received it from Defendants. (Dkt. #21-1). The agreement also includes a non-disparagement clause, which states that Plaintiff "agrees to not make any oral or written communication of a false or defamatory nature to any person or entity which disparages Defendants in any way." (*Id.*). Defendant Edelstein similarly "agrees to not make any oral or written communications of a false or defamatory nature to any person or entity which disparages Plaintiff in any way." (*Id.*). The non-disparagement clause further states: "[N]o provision in this Agreement shall be construed to restrict Plaintiff's ability to discuss her experience in litigating a wage-and-hour case brought pursuant to the Fair Labor Standards Act or New York Labor Law." (*Id.*).

## DISCUSSION

**A.     Applicable Law**

Stipulated dismissals settling FLSA claims with prejudice "require the approval of the district court or the [Department of Labor] to take effect." *Cheeks* v. *Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). In reviewing any such dismissal, the district court must evaluate "whether [the] proposed FLSA settlement is 'fair and reasonable' and whether any proposed

5

award of attorneys' fees is reasonable." *Lopez* v. *Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) (citing *Wolinsky* v. *Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)).

Courts evaluating the fairness and reasonableness of a proposed FLSA settlement consider the totality of circumstances, including such specific factors as:

> [i] the plaintiff's range of possible recovery; [ii] the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; [iii] the seriousness of the litigation risks faced by the parties; [iv] whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and [v] the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks omitted) (quoting *Medley* v. *Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Courts must also review the record for facts that might counsel against approval of a proposed settlement, including:

> [i] the presence of other employees situated similarly to the claimant; [ii] a likelihood that the claimant's circumstance will recur; [iii] a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and [iv] the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id.* at 336 (internal quotation marks omitted) (quoting *Dees* v. *Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Relatedly, courts must review for fairness any release of claims in the proposed settlement agreement. Release clauses may not "purport to waive

6

practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Nights of Cabiria*, 96 F. Supp. 3d at 181. Releases that are not confined to wage and hour claims "are doubly problematic" in light of the courts' "obligation to police unequal bargaining power between employees and employers[.]" *Id.* Simply put, "an employer is not entitled to use an FLSA claim ... to leverage a release from liability unconnected to the FLSA." *Id.* (quoting *Moreno* v. *Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)); *see also Camacho* v. *Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014).

A district court must also consider the fairness of the attorney's fees, and the court has discretion to determine the amount of attorney's fees that would be appropriate to satisfy a fee award. *See Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983); *see also* Fed. R. Civ. P. 54(d). Courts have discretion to award attorney's fees based on a lodestar method — "the product of a reasonable hourly rate and the reasonable number of hours required by the case," *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) — or a percentage-of-recovery method. *See McDaniel* v. *Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Plaintiff's counsel here seeks fees pursuant to the percentage-of-recovery method. In such instances, courts in this District typically approve a fee of one-third or less of the settlement amount. *See, e.g., Santos* v. *Yellowstone Props., Inc.*, No. 15 Civ. 3986 (PAE), 2016 WL 2757427, at *4 (S.D.N.Y. May 10,

2016) (noting that "one-third-of-settlement sum is consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases'" (quoting *Najera* v. *Royal Bedding Co., LLC*, No. 13 Civ. 1767 (NGG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015))); *Meza* v. *317 Amsterdam Corp.*, No. 14 Civ. 9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (approving a fee of approximately one-third of the settlement amount); *Thornhill* v. *CVS Pharmacy, Inc.*, No. 13 Civ. 5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases in which courts have rejected fee awards above one-third of the settlement amounts).

Even where attorney's fees are calculated with the percentage method, courts must still independently ascertain the reasonableness of the requested fees. *See Run Guo Zhang* v. *Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015). To do so, courts typically perform a lodestar "cross-check": They compare the fees generated by the percentage method with those generated by the lodestar method. *See Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (encouraging the practice "of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage"); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 373-74 (S.D.N.Y. 2013) (applying the lodestar "cross-check" to assess the reasonableness of fees calculated using the percentage method). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can

8

be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50. Ultimately, "the fees awarded … may not exceed what is 'reasonable' under the circumstances." *Id.* at 47.

**B.    Analysis**

The proposed agreement submitted by the parties is, in most respects, fair and reasonable. The settlement payment that Plaintiff is to receive, $30,785.60, is reasonable in light of the range of potential recovery. To be sure, Plaintiff claims that Defendants owe her $43,335, which is $12,549.40 more than she stands to recover under the proposed agreement. But it is equally true that a number of outstanding factual and legal disputes exist, and that if this case were to proceed to trial, Plaintiff would bear the attendant risk of a lesser recovery. The outstanding disputes include: (i) whether Plaintiff was a partner, and not an employee, of the Corporate Defendants; (ii) the extent of the alleged non-payment; (iii) the willfulness *vel non* of any violations of the wage and hour laws; and (iv) whether the Corporate Defendants' annual sales were below $500,000, in which case the FLSA would not apply, under 29 U.S.C. § 203(s)(1)(A). (*See* Dkt. #21). If this case were to proceed towards trial, these issues would no doubt be litigated aggressively. By accepting a payment that is $12,549.40 lower than her alleged damages, Plaintiff protects herself from the not-insubstantial risks that inhere in litigating this case further. The Court therefore finds that the payment of $30,785.60 is reasonable.

Similarly, the Court finds that the confidentiality clause is fair and reasonable. The parties "have agreed that the settlement amount [and the

settlement agreement] will not be confidential." (Dkt. #21, at 3). The confidentiality clause, such as it is, merely seeks to protect confidential information that is proprietary to the Defendants and that Plaintiff only learned through her employment with Defendants. (Dkt. #21-1). It does not in any way limit the parties' ability to make the agreement public or discuss the terms of the settlement with third parties. Accordingly, the clause does not run afoul of the holdings of "the overwhelming majority of courts [that] reject the proposition that FLSA settlement agreements can be confidential." *Nights of Cabiria*, 96 F. Supp. 3d at 177 (internal quotation marks and citation omitted).

Nor does the non-disparagement clause present any concerns. The clause only restrains the parties from making false or defamatory statements that disparage the other side, and it expressly permits Plaintiff to make statements relating to her "experience in litigating [this] wage-and-hour case[.]" (Dkt. #21-1). As required by courts in this District, the non-disparagement clause in the proposed agreement "include[s] a carve-out for truthful statements about plaintiffs' experience litigating their case." *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65; *see also Chandler* v. *Total Relocation Servs., LLC*, No. 15 Civ. 6791 (HBP), 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017) (collecting cases in which courts have required a carve-out for truthful statements about plaintiffs' experiences litigating their cases). For this reason, the Court finds that the non-disparagement clause is reasonable.

Nevertheless, this Court cannot approve the settlement agreement in its current form, because the attorney's fees are excessive, and the release of claims is overly broad.

### 1. The Attorney's Fees Are Excessive

The attorney's fees awarded in the proposed settlement — 40 percent of the total — are unreasonable.[6] "Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Run Guo Zhang*, 2015 WL 5122530, at *4. In *Run Guo Zhang*, the court rejected an FLSA settlement where the attorney's fees totaled 37 percent of the net settlement amount. *Id.* Other courts in this District have rejected settlement agreements where the attorney's fees represented more than one-third of the total settlement amount. *See Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (rejecting an award of 36 percent of the total); *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (rejecting a 39 percent fee award); *Thornhill*, 2014 WL 1100135, at *3 (noting that "courts typically approve attorney's fees that range between 30 and 33" percent).

The case at bar does not present any extraordinary circumstances that might justify a departure from the typical practice of courts in this District.

---

[6] By contrast, the Court is unconcerned with the $714.40 of expenses incurred in prosecuting this action. The expenses include a $400 court filing fee, $200 process server fees, $80 filing fees with the New York Secretary of State, and $34.40 postage and delivery fees. (Dkt. #21-3). Each of those expenses was reasonably incurred.

11

The matter was a relatively straightforward FLSA/NYLL action. Though the case presented some complex factual and legal issues, the parties elected not to litigate any of those issues and instead focused their time and efforts on securing a settlement agreement. The case did not involve motion practice or court conferences, and Defendants have yet to file a responsive pleading. The parties note that "significant work was expended by Plaintiff's attorney[ ] in diligently reviewing materials with respect to the months worked by Plaintiff as well as wages paid to her" (Dkt. #21, at 4); yet it is decidedly unexceptional in FLSA cases for plaintiff's counsel to review records of their clients' work hours and wages. Nothing about this case suggests that attorney's fees in excess of one-third of the total settlement amount would be reasonable. Accordingly, the Court will not approve any settlement agreement where the attorney's fees exceed 33 percent of the total settlement amount, or $17,500 ("One-Third Fee").

Because the parties have yet to submit a revised settlement agreement, the Court will not, at this time, determine whether the One-Third Fee would be reasonable. However, the Court pauses to consider the lodestar cross-check — that is, to compare the One-Third Fee to the lodestar amount in this case. The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case[.]" *Millea*, 658 F.3d at 166. Here, Plaintiff's counsel billed 28.321 hours, which the Court finds to be reasonable in light of the extensive settlement negotiations and client consultations that occurred between November 2017 and March 2018 and that enabled the parties to reach

a settlement. (Dkt. #21-3). For someone with ten or more years of experience practicing law in this area, this Court recently approved an hourly rate of $325 per hour. *Galindo* v. *E. Cty. Louth Inc.*, No. 16 Civ. 9149 (KPF), 2017 WL 5195237, at *5 (S.D.N.Y. Nov. 9, 2017) (approving an hourly rate of $375 for a managing partner and $325 for senior counsel with over ten years of experience in wage and hour cases).[7] That hourly rate results in a lodestar of $9,204.33. Though that amount is less than the One-Third Fee, the variance between the two is within the range that courts in this District typically find to be reasonable. *See, e.g.*, *Sewell* v. *Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (noting that courts in this District "commonly award lodestar multipliers between two and six"). Without deciding whether the One-Third Fee (or some lesser amount) is reasonable, the Court notes that the lodestar cross-check would not militate against approval of a settlement agreement in which the attorney's fees totaled one-third or less of the settlement amount.

### 2. The Release of Claims Is Impermissibly Broad

Turning now to the non-fees components of the Settlement Agreement, the Court is concerned with only one provision: the release of claims. In FLSA

---

[7] An hourly rate of $325 is consistent with rates approved by other courts in this District. Indeed, courts in this District have repeatedly found that experienced attorneys "typically charge between $300 and $400 per hour for wage-and-hour cases," *Vasquez* v. *TGD Grp., Inc.*, No. 14 Civ. 7862 (RA), 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016), and have awarded fees at comparable rates based on that finding, *see, e.g.*, *Mendoza* v. *CGY & J Corp.*, No. 15 Civ. 9181 (RA), 2017 WL 4685100, at *2 (S.D.N.Y. Oct. 17, 2017) ("[C]ourts in this District generally approve rates of $300-$400 per hour for partners in FLSA cases and $300 per hour for senior attorneys or associates with eight or more years' experience." (collecting cases)).

cases, "courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung* v. *White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Bukhari* v. *Senior*, No. 16 Civ. 9249 (PAE) (BCM), 2018 WL 559153, at *2 (S.D.N.Y. Jan. 23, 2018) (rejecting a provision releasing defendants "from any and all claims ... arising from or concerning in any way [plaintiff's] employment ... with [d]efendants"); *contra Pucciarelli* v. *Lakeview Cars, Inc.*, No. 16 Civ. 4751 (RRM) (RER), 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving a release of "any and all past and present ... claims ... based upon ... laws governing minimum wage, overtime pay, wage payments, [or other wage and hour issues]" because the "terms of the release are not 'unconnected to the FLSA'" (quoting *Camacho*, 2014 WL 6985633, at *4)).

In contravention of well-established case law, the proposed settlement agreement would require Plaintiff to release any and all claims against Defendants, including those that do not "arise[ ] out of the identical factual predicate as the settled conduct." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (internal quotation marks and citation omitted). The agreement states that Plaintiff agrees to release "any and all claims ... against Defendants ... *including, without limitation*, the Wage and Hour Claims[.]" (Dkt. #21-1 (emphasis added)). The plain language of the release clause covers all claims that Plaintiff might have against Defendants, not simply those that relate to the

14

wage and hour disputes at issue here.  Courts in this Circuit have consistently found such waivers to be impermissibly broad, and this Court sees no reason to depart from that practice.  Accordingly, unless the parties revise the release clause to pertain only to claims arising out of the factual predicate of the conduct at issue here, the Court will not approve the settlement.

## CONCLUSION

For the foregoing reasons, the parties' request to approve the proposed settlement is denied without prejudice to the filing of a revised settlement agreement **within two weeks** of the date of this Order.  If the parties are unwilling or unable to revise the settlement agreement in accordance with this Opinion, they are directed to advise the Court of same in writing on or before **April 24, 2018**, in which case Defendants will be expected to file a timely response to the Complaint.

SO ORDERED.

Dated:	April 6, 2018
	New York, New York

_____
	KATHERINE POLK FAILLA
	United States District Judge